**FILED**
**United States Court of Appeals**
**Tenth Circuit**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**March 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PAUL WOODIE; KYM WOODIE; BIG
BEAR TOWING & REPAIR, LLC,

      Plaintiffs - Appellants,

v.

BERKSHIRE HATHAWAY
HOMESTATE INSURANCE COMPANY,

      Defendant - Appellee.

No. 19-8045
(D.C. No. 2:18-CV-00188-NDF)
(D. Wyoming)

---

## ORDER AND JUDGMENT[*]

---

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.

---

This is an appeal from a diversity action asserting tort and contract claims under

Wyoming law based on the alleged breach of a garage auto insurance policy. Paul and

Kym Woodie, along with their company, Big Bear Towing & Repair, LLC, challenge the

district court's grant of judgment on the pleadings to Berkshire Hathaway Homestate

Insurance Company—Big Bear's insurer. The Woodies argue that by failing to notify

them of an underinsured motorist claim made by an individual driving a tow truck for Big

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Bear, or to include them in the release of that claim, Homestate breached the policy, acted in tortious bad faith, and breached the implied contractual covenant of good faith and fair dealing. According to Appellants, Homestate's actions and omissions prevented the Woodies from defending against Wyoming's assertion of statutory workers' compensation liability by challenging the state's misperception that the tow truck driver involved in the accident was a Big Bear employee. Appellants have failed to plausibly plead their claims.

Under the policy, Homestate had no duty to notify Big Bear of the underinsured motorist claim or to defend it against any resulting adverse collateral consequences. Additionally, Homestate's duty of good faith and fair dealing ran only to the insured with respect to the policy claim at issue—in this case the tow truck driver, not Big Bear. Furthermore, to sanction the claim for breach of the covenant of good faith and fair dealing would be to impermissibly extend that principle beyond its contractual mooring. Because the district court properly cabined the scope of its analysis, we also reject Appellants' argument that Homestate's motion for judgment on the pleadings should have been converted to one for summary judgment. As a result, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

Paul and Kym Woodie are engaged in the business of vehicle towing and repair through Big Bear Towing & Repair, LLC ("Big Bear"). The Woodies are the only two members of Big Bear, a Wyoming company that does business in the greater Yellowstone

area. The Woodies and Big Bear, Plaintiffs-Appellants, operate several tow trucks and have eight to twelve employees.

Berkshire Hathaway Homestate Insurance Company ("Homestate"), Defendant-Appellee, issued a "garage" auto insurance policy (the "Policy") to Big Bear with effective coverage dates of August 28, 2013 to August 28, 2014. App. 49. The "Named Insured" under this Policy was "Big Bear Towing & Repair LLC." App. 59. The Policy, fully paid for by the Woodies, provided uninsured/underinsured motorist coverage through the following endorsement:

> We [Homestate] will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

App. 159 (the "UM endorsement"). The Policy further defined "Insured" to include "[a]nyone 'occupying' a covered 'auto.'" App. 159. Additionally, an "[u]ninsured motor vehicle" was defined to include "an underinsured motor vehicle." App. 161.

In June of 2013, Mr. Woodie contracted with Daniel Rimer to provide towing services for Big Bear. Mr. Rimer agreed to lease two tow trucks to the company for a five-year service period, during which he would "not compete nor operate tow trucks without being directly under the operations of Big Bear." App. 189. The contract stated that as a "sub contractor," Mr. Rimer would receive a monthly call fee, "along with commission or hourly rate depending on type of call," and that "all [of his] tows will be dispatched through Big Bear Towing with no exception." App. 189.

On July 8, 2014, during the Policy coverage period, Mr. Rimer was involved in a head-on collision while performing towing services for Big Bear. The Woodies were made aware of the accident, but Mr. Rimer did not tell anyone at Big Bear that he was injured, nor ask any Big Bear representative to fill out an employer report of injury for purpose of workers' compensation.

Mr. Rimer started experiencing pain several weeks after the collision. He visited a doctor and filed a report of injury with the Wyoming Department of Workforce Services, Workers' Compensation Division (the "Division"). He also made a claim against the company insuring the driver of the vehicle that collided with him—deemed the tortfeasor in the accident—resulting in a $100,000 recovery. Additionally, and unbeknownst to Big Bear, Mr. Rimer made a claim under the Policy's UM endorsement, as the occupant of a covered auto involved in an accident with an underinsured motorist resulting in bodily injury (the "UIM claim").

Under the Wyoming Worker's Compensation Act, only employees are eligible for benefits, and independent contractors are excluded from the statutory definition of employee. *See* Wyo. Stat. § 27-14-102(a)(vii). Notwithstanding any indicia that Mr. Rimer's employment status vis-à-vis Big Bear was that of independent contractor, the Division determined his accident-related injuries to be compensable under the Act and began paying him benefits.[1] As of September 8, 2016, those benefits totaled $154,980 in workers' compensation.

---

[1] The record contains a 2015 wage-dispute ruling by the Wyoming Department of Workforce Services, Division of Appeals, that Mr. Rimer "was not an employee [of Big

Shortly before that date, and again unbeknownst to Big Bear, Mr. Rimer reached a

settlement with Homestate on his UIM claim in the amount of $550,000. Wyoming law

entitles the state to seek reimbursement of workers' compensation benefits when an

employee recovers from a third party for a covered injury, up to one third of the total

recovery.[2] As a result, coincident with his Homestate settlement, Mr. Rimer executed a

settlement with the state to release its statutory reimbursement claim in exchange for a

portion of his Homestate settlement funds. On September 12, 2016, Mr. Rimer agreed to

pay the Division $55,000 as "full satisfaction of the state's statutory lien" on his

$550,000 insurance recovery from Homestate, while retaining all rights to continue

receiving workers' compensation benefits for treatment of injuries sustained in the 2014

accident. App. 242. Mr. Rimer and the Division were the only signatories to this

agreement, but the Division agreed to release Homestate "from any further legal

---

Bear] and therefore not subject to the jurisdiction of the Department of Workforce
Services." App. 235. The relationship between this decision—which presumably came
after the Workers' Compensation Division first began paying Mr. Rimer benefits—and
the decision to continue compensating Mr. Rimer for his work-related injuries is unclear.
We take no position on Mr. Rimer's proper employment classification under state law.

[2] The relevant statute, Wyo. Stat. § 27-14-105(a), provides:

[I]f the employee recovers from the third party or the coemployee in any
manner including judgment, compromise, settlement or release, the state is
entitled to be reimbursed for all payments made, or to be made, to or on
behalf of the employee under this act but not to exceed one-third (1/3) of
the total proceeds of the recovery without regard to the types of damages
alleged in the third-party action.

obligation to reimburse" Wyoming for Mr. Rimer's workers' compensation payments.
App. 242.[3]

Mr. Rimer finalized his $550,000 settlement and release with Homestate on
September 19, 2016. This agreement included language "releas[ing] and discharg[ing]"
Homestate "from any and all . . . liens . . . now accrued or to accrue in the future" from
the 2014 accident. App. 22. Big Bear was not a party to either this settlement or to
Mr. Rimer's corollary settlement with the Division regarding its statutory lien. And Big
Bear had no contemporaneous knowledge of either agreement.

At some point the following year, 2017, the Woodies began receiving notices from
the Division of a lien against Big Bear in the amount of the workers' compensation paid
by the state to Mr. Rimer. The state sought this recovery under Wyoming Statute
§ 27-14-203(a) because Big Bear had not made the workers' compensation payments
required by the Wyoming Worker's Compensation Act with respect to Mr. Rimer.[4]

---

[3] It is unclear whether Homestate was involved in initiating or facilitating this
agreement between Mr. Rimer and the Division. It is also unclear whether the Division
was involved in the initial settlement negotiations between Homestate and Mr. Rimer.

[4] Section 27-14-203(a) provides:

Any employer not applying for coverage of eligible employees or, after
obtaining coverage under this act, any employer failing, neglecting or
refusing to make payments required by this act within thirty (30) days of
the date due and against whom any injured employee is held entitled to
worker's compensation benefits is liable to the state for an amount equal to
all awards, both paid and reserved entered for payment to or for the
employee under this act. If the employer fails, neglects or refuses to satisfy
his liability within the thirty (30) day period, the amount may be recovered
by civil action in the name of the director.

On June 9, 2017, Mr. Woodie received notice of Homestate's $550,000 settlement with Mr. Rimer. On January 29, 2018, Mr. Woodie spoke with Michelle Gomez, a claims adjuster for National Indemnity, Homestate's corporate affiliate. Ms. Gomez informed Mr. Woodie that he was "protected" under the release executed between Mr. Rimer and Homestate. App. 229. The next day, Ms. Gomez emailed Big Bear a copy of Homestate's settlement release with Mr. Rimer. She wrote that the settlement "is not workers compensation coverage; however, the release does state that Mr. Reimer [sic] was responsible for payment of liens." App. 21. National Indemnity and Homestate denied Mr. Woodie's subsequent requests for more information regarding the settlement of the underlying UIM claim, providing only the release signed by Mr. Rimer.

Throughout 2018 and into 2019, Big Bear continued to receive notices from the Division of a statutory lien against Big Bear in the amount of the workers' compensation paid to Mr. Rimer. The Woodies attached one such notice to their complaint. Dated January 11, 2019, the Division's billing statement informed Big Bear that "[u]nder W.S.27-14-203(a) you are liable for an amount equal to all the medical and indemnity payments made on behalf of an employee who was injured when your account was delinquent in Workers' Compensation reporting or payment or both." App. 25. It listed a total owed of $178,278 in "Case Cost Liability," while noting that "[d]elinquent premium and interest is billed separately." App. 25.

---

Under § 27-14-203(e), "[i]f payments under this act are not paid on or before the date due and following notice . . . , the director may file a lien with the county clerk of the county in which the employer has his principal place of business."

### B.   *Procedural History*

On September 28, 2018, the Woodies and Big Bear sued Homestate and National

Indemnity in Wyoming state court, asserting claims for breach of contract, bad faith, and

breach of the covenants of good faith and fair dealing, while seeking attorney fees and

punitive damages. Homestate removed to the United States District Court for the District

of Wyoming based on diversity jurisdiction. On February 1, 2019, Big Bear filed a First

Amended Complaint (the "FAC"), which Homestate answered. On April 15, 2019, the

district court dismissed all claims against National Indemnity with prejudice. Homestate

then moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). On June 24, 2019,

the district court granted Homestate's Rule 12(c) motion and dismissed Big Bear's FAC

with prejudice.

The district court first addressed Big Bear's claim that because Homestate

attached extraneous documents to its motion for judgment on the pleadings—namely, a

copy of the Policy, a copy of the collision report, and a copy of a complaint by Mr. Rimer

filed in a separate action against Big Bear—its 12(c) motion should be converted to one

for summary judgment. The court declined to accept this invitation because it had "not

considered or relied on outside materials in rendering the decision." App. 283.

Next, the district court addressed Big Bear's claim that Homestate breached its

duty to defend under the policy. The court interpreted Big Bear as arguing that

Homestate's failure to inform Appellants of Mr. Rimer's claim or to include them in the

settlement "exposed them to a large worker's compensation lien by foreclosing their

ability to negotiate with the Division concerning the claim for benefits made by or on behalf of Rimer." App. 284.

The district court explained, "the issue under the 'duty to defend' is whether there is any claim alleged in the complaint that is potentially covered under the policy." App. 285. Because the only applicable claim alleged in the complaint was Mr. Rimer's UIM claim and under the plain terms of the Policy, Mr. Rimer was the insured under that claim, the court concluded that Homestate's duty to defend ran only to Mr. Rimer. And, after finding that the claims by the state Department of Workforce Services were not covered under the Policy, the district court held Big Bear's allegation—that Homestate left it exposed to Wyoming's lien for recoupment of workers' compensation benefits— failed to state a viable claim for breach of contract.

The district court then analyzed Big Bear's counts of procedural bad faith and breach of the covenant of good faith and fair dealing. The court found no caselaw "to suggest a reasonable insurer under the circumstances of adjusting and settling a UIM claim made by an insured, would have acted in some other way toward [Plaintiffs] under the appropriate objective standard of care." App. 287. "[T]o suggest that Homestate should not have approved the UIM claim without Plaintiffs' approval . . . would have interfered with the singular duty Homestate owed under the policy to the insured, Rimer, to apply ordinary care and reasonable diligence in handling the claim." App. 288.

The district court went on to note that Big Bear was asking for duties to be imposed upon Homestate, "retroactively and outside any contractual agreement, which would operate to protect and indemnify Plaintiffs from their own negligence i[n] failing

9

to make payments required for coverage under Wyoming's worker's compensation laws." App. 289. The covenant of good faith and fair dealing, however, may not "be construed to establish [such] new, independent rights or duties not agreed to by the parties." App. 289 (quoting *Scherer Constr., LLC v. Hedquist Constr., Inc.*, 18 P.3d 645, 653 (Wyo. 2001)).

## II.    DISCUSSION

Big Bear argues the district court erred by failing to convert Homestate's motion for judgment on the pleadings into one for summary judgment, and "misapplied the appropriate standard of review" in granting Homestate's motion by "ignoring the contract's duty to defend and the covenant of good faith and fair dealing." Appellant Br. at 17. Sitting in diversity, we resolve these arguments by applying federal procedural law and state substantive law—here, Wyoming contract and insurance law. *See Marathon Ashland Pipe Line LLC v. Maryland Cas. Co.*, 243 F.3d 1232, 1236 (10th Cir. 2001).

### A.    *Conversion of Judgment on the Pleadings*

Big Bear asserts that because Homestate attached extraneous documents to its motion for judgment on the pleadings, the district court should have applied Fed. R. Civ. P. 12(d):

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

But "the district court has broad discretion in determining whether to accept materials beyond the pleadings." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,

861 F.3d 1081, 1103 (10th Cir. 2017). The same abuse of discretion standard is applied to a district court's refusal to convert either a Rule 12(b)(6) motion to dismiss or a Rule 12(c) motion for judgment on the pleadings to one for summary judgment. *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 & n.5 (10th Cir. 1998). To hold the district court abused its discretion by refusing to convert a Rule 12(c) motion to a Rule 56 motion, we must determine it relied on material outside the complaint in rendering its decision. *Alexander v. Oklahoma*, 382 F.3d 1206, 1214 (10th Cir. 2004). When outside materials are not excluded by the court, failing to convert a 12(c) motion "is reversible error unless the dismissal can be justified without considering the outside materials." *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

In arguing the district court erred by not converting the motion, Big Bear references three documents attached by Homestate to its motion for judgment on the pleadings: the insurance policy itself, the Idaho vehicle collision report from Mr. Rimer's 2014 accident, and a collateral complaint filed by Mr. Rimer against Big Bear.

### 1. The Insurance Policy

Big Bear did not argue below that it was improper for the district court to consider the Homestate Policy in ruling on the motion for judgment on the pleadings. App. 283. And Rule 12(d) is not implicated when a court "consider[s] documents attached to or referenced in the complaint if they are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Brokers' Choice*, 861 F.3d at 1103 (internal quotation marks omitted). Here, the Policy is referenced in the FAC—"[i]ndeed, it is at the heart of the claims pled by Plaintiff," App. 283—and neither party disputes its

authenticity. The district court therefore properly considered the Policy in ruling on the motion.

## 2. The Collision Report and Mr. Rimer's Complaint

Homestate also "inadvertently" attached to its motion both the accident collision report and Mr. Rimer's separate complaint against Big Bear. Appellee Br. at 30. However, conversion of a Rule 12(c) motion is "not triggered by the mere presence of outside materials, but by the court's *reliance* on such materials." *Christensen v. Big Horn Cty. Bd. of Cty. Comm'rs*, 374 F. App'x 821, 826 (10th Cir. 2010) (unpublished) (citing *Alexander*, 382 F.3d at 1214). Here, the district court expressly stated that it "has not considered or relied on outside materials in rendering the decision." App. 283.

Furthermore, Homestate correctly asserts that "Appellants do not and cannot identify any portion of the district court's order that would provide any indication that the court relied on the accident report or the Rimer Complaint." Appellee Br. at 31. Big Bear argues the court "improperly looked outside of the Complaint to determine" that it was "'delinquent' on workers' compensation premiums." Appellant Br. at 27. But the court did not need to rely on either inadvertently attached document to learn of this delinquency. The FAC acknowledged "a Worker's Compensation lien existed against Plaintiffs," App. 13, and also attached as an exhibit a notice from the Division stating that Big Bear's workers' compensation account was "delinquent," App. 25. The district court cited these portions of the pleadings in its order.[5] In contrast, there is no evidence the

---

[5] Because the Division notice attached as an exhibit to the FAC was central to Big Bear's claims, and neither party disputes its authenticity, the district court properly relied

court relied on the collision report or Mr. Rimer's collateral complaint in rendering its decision. *See Lowe*, 143 F.3d at 1381 (holding "Defendants have not demonstrated that the district court relied on matters outside of the pleadings when ruling on the motion to dismiss," where facts allegedly "gleaned" from a deposition affidavit "were also contained in the pleadings").

In sum, the district court expressly indicated it did not consider Homestate's extraneous attachments, Big Bear identified no section of the court's order reliant on them, and the relevant facts regarding workers' compensation liability were contained in the FAC and its permissible attachments. Thus, the conversion process was not triggered, and the district court did not abuse its discretion by refusing to convert Homestate's 12(c) motion to a motion for summary judgment.

## B.   *Judgment on the Pleadings*

We review a district court's ruling on a Rule 12(c) motion for judgment on the pleadings de novo, applying the same standard of review used for Rule 12(b)(6) motions to dismiss. *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1200 (10th Cir. 2016). To apply this standard, we accept as true all well-pleaded factual allegations in the complaint, "resolve all reasonable inferences in the plaintiff's favor, and ask whether it is plausible that the plaintiff is entitled to relief." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (citation and internal quotation marks omitted); *see*

---

on it in deciding Homestate's motion for judgment on the pleadings. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Brokers' Choice*, 861 F.3d at 1104 (quoting *Iqbal*, 556 U.S. at 678). "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Id* at 1104–05.

Big Bear's FAC purports to state claims for "Breach of Contract" (Count I), "Bad Faith – Breach of Insurance Contract" (Count II), and "Breach of the Covenants of Good Faith and Fair Dealing" (Count III). App. 15–18. As discussed below, Big Bear has failed to plausibly plead any of these counts. Consequently, Counts IV and V, which request attorney fees, prejudgment interest, and punitive damages, are also legally insufficient.[6]

## 1. Breach of Contract

Count I of the FAC alleges that Homestate "materially breached the insurance policy by refusing to perform [its] contractual obligations and to properly adjust and settle the underlying claim." App. 15. Homestate correctly notes that "the FAC failed to cite to any pertinent contractual language of the Policy" in connection with Count I.

---

[6] Big Bear fails to make any argument in support of its Count IV claim that Homestate is responsible for Big Bear's attorney fees under Wyoming Statute § 26-15-124(c), so this argument is waived. *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 981 n.6 (10th Cir. 2002).

Appellee Br. at 13. Big Bear argues on appeal, however, that it plausibly pleaded a breach of the duty to defend under the Policy.

According to Appellants, Homestate breached its duty to defend by failing to notify Big Bear of Mr. Rimer's UIM claim or its settlement, and by failing to include Big Bear in the release. Homestate allegedly had "superior knowledge" of the discrepancy in how Big Bear and the Division viewed Mr. Rimer's status (as independent contractor and employee, respectively), yet did not inform Appellants of this consequential "misunderstanding." Appellant Br. at 25–26. By thus failing "to defend Big Bear's interests as to its purported employee," Appellants claim Homestate "exposed Big Bear to a large Wyoming Workers Compensation lien." Appellant Br. at 31–32. Even liberally construing the FAC to implicate Homestate's duty to defend under the Policy, Big Bear is unable to meet the plausibility threshold on its breach of contract claim.

Under Wyoming law, "[t]he obligation to defend is an independent consideration in liability insurance," and "[t]he insurer is obligated to afford a defense as long as the alleged claim rationally falls within the policy coverage." *Shoshone First Bank v. Pac. Emp'rs Ins. Co.*, 2 P.3d 510, 513–14 (Wyo. 2000). "[A]n insurer's duty to defend is broader than its duty to provide coverage." *Matlack v. Mountain W. Farm Bureau Mut. Ins. Co.*, 44 P.3d 73, 79 (Wyo. 2002). But an insurer is bound only to defend against *actual claims*. *See First Wyo. Bank, N.A. v. Cont'l Ins. Co.*, 860 P.2d 1094, 1097 (Wyo. 1993) ("[W]e analyze the duty to defend by examining the facts alleged in the complaint that the claim is based upon."). Resolving whether a breach of the duty to defend is plausibly pleaded thus requires determining the scope of the policy's duty to defend

clause, then determining whether the claims alleged "could rationally fall within that scope." *Notwen Corp. v. Am. Econ. Ins. Co.*, 206 F. App'x 811, 813 (10th Cir. 2006) (unpublished) (citing *Lawrence v. State Farm Fire & Cas. Co.*, 133 P.3d 976, 980 (Wyo. 2006)).

Here, the Policy's duty to defend clause obligated Homestate to defend only against "any *suit* asking for damages covered by this policy." App. 170 (emphasis added). The Policy defined a "suit" as:

> a civil proceeding in which:
> 1. Damages because of "bodily injury" or "property damage"; or
> 2. A "covered pollution cost or expense",
> to which this insurance applies, are claimed.

App. 156.[7]

 "Big Bear did not allege that the Policy it paid for would or should cover the Division's workers' compensation lien." Appellant Br. at 25. Thus, as the district court determined, the only applicable claim alleged in the complaint to which the duty to defend could rationally apply is Mr. Rimer's UIM claim. But no duty to defend Big Bear was triggered by that first-party claim[8] brought by Mr. Rimer against Homestate. Rather, the potential duty flowed only to Mr. Rimer, who qualified as the "insured" for purposes of the UM endorsement, as the occupant of the covered auto at the time of the accident

---

[7] The definition of "suit" also included arbitration and other alternative dispute resolution proceedings. App. 156.

[8] "A first-party claim results when the insured makes a claim against his insurer for benefits accruing directly from the insurance contract." *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 827 (Wyo. 1991).

with an underinsured motorist. *See* App. 159. And, as the district court correctly noted, Big Bear makes no allegation "that Homestate violated its duty to defend Rimer, or left [Appellants] exposed to unresolved claims by Rimer against them for bodily injury which should have been settled by Homestate." App. 286.

Instead, Big Bear contends that Homestate had a duty to "defend[] its interests" based on Homestate's "superior knowledge" concerning the Division's classification of Mr. Rimer as an employee rather than independent contractor, which "triggered" Big Bear's Wyoming workers' compensation liability. Appellant Br. at 25. Homestate, however, had no such contractual duty to defend Big Bear's general interests by notifying it of Mr. Rimer's claim, informing Big Bear of the Division's potential misclassification, including it in settlement negotiations, or otherwise. Homestate contracted only to defend the company against those "civil proceeding[s]" noted in the Policy. App. 156. No such civil proceedings were initiated against Big Bear when Homestate processed Mr. Rimer's UIM claim. And the alleged risks to Appellants as a result of their ignorance of Mr. Rimer's claim and settlements do not amount to a "claim rationally fall[ing] within the policy coverage." *Shoshone*, 2 P.3d at 513. The district court thus correctly concluded that Big Bear failed to state a claim for breach of the contractual duty to defend.

Big Bear's duty to defend allegation also fails to state a claim because it can point to no Policy provision that depended upon classification of an insured's employment status. Whether Homestate was obligated to pay the UIM claim hinged not on whether Mr. Rimer was an independent contractor or an employee, but on whether he was the occupant of a covered auto at the time of an accident with an underinsured vehicle

resulting in bodily injury. It follows that Homestate had no duty to investigate Mr.

Rimer's employment status in connection with his UIM claim, alert Big Bear of any

potential "misunderstanding" with the state on that front, *see* Appellant Br. at 26, or

defend Big Bear from any potential adverse collateral consequences.

To the extent Count I can be alternately construed as alleging Homestate breached

a duty to notify the Woodies of Mr. Rimer's UIM claim or release, Appellants have

similarly failed to attain plausibility. Big Bear states it "was bound under the Policy to

give [Homestate] notice [of a claim] and this requirement should have been mutual."

Appellant Br. at 5. As the district court determined, however, Appellants "provide no

reference to any contractual duty, express or otherwise, which requires Homestate to give

them notice of a UIM claim made by an occupant of a covered auto." App. 284 n.3. They

also cite no caselaw holding that UM endorsements include a mutual duty to notify, and

we have found none. To the contrary, Homestate cites a Florida case that rejected any

extracontractual duty to first notify and obtain consent of the "policyholders who paid the

premium on the UMI coverage" before settling the UM claims of "covered persons"

under the policy. *Gathings v. W. Am. Ins. Co.*, 561 So. 2d 450, 451 (Fla. Dist. Ct. App.

1990). Big Bear has therefore failed to adequately plead a breach of contract claim based

on an alleged duty to notify.

**2. Procedural Bad Faith**

Count II of the FAC alleges a bad faith breach of the insurance contract.

Specifically, Big Bear asserts procedural bad faith in how Homestate "investigated,

handled or denied the claim." Appellant Br. at 36 (quoting *Hatch v. State Farm Fire & Cas. Co.*, 842 P.2d 1089, 1099 (Wyo. 1992)).

Wyoming treats bad faith as an "independent tort for violation of a duty of good faith and fair dealing in insurance policy application by the carrier to its insured." *McCullough v. Golden Rule Ins. Co.*, 789 P.2d 855, 858 (Wyo. 1990); *see Marathon Ashland Pipe Line*, 243 F.3d at 1250. Although typically measured by "the objective standard whether the validity of the denied claim was not fairly debatable," *McCullough*, 789 P.2d at 860, Wyoming law also recognizes procedural bad faith. *See Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 857 (10th Cir. 2015). Thus, "even if a claim for benefits is fairly debatable, the insurer may breach the duty of good faith and fair dealing by the manner in which it investigates, handles or denies a claim." *State Farm Mut. Ins. Co. v. Shrader*, 882 P.2d 813, 828 (Wyo. 1994) (citing *Hatch*, 842 P.2d at 1099); *see also Hatch*, 842 P.2d at 1099 ("A 'fairly debatable' reason to deny a claim is not a defense against torts that may flow from engaging in oppressive and intimidating claim practices."). Procedural bad faith, however, requires a "'compelling' factual showing." *Cornhusker*, 786 F.3d at 859 (quoting *Matlack*, 44 P.3d at 81). "[U]nless it is evident that the insurer performed *no* form of satisfactory investigation, a procedural bad-faith claim will not be viable." *Id.*

The threshold issues for Appellants' procedural bad faith claim are whether (a) Homestate owed a duty of good faith and fair dealing to Big Bear in the context of Mr. Rimer's UIM claim, and whether (b) Big Bear's allegation can be categorized as

either first- or third-party bad faith, the two varieties of the tort recognized under

Wyoming law, which we explain in greater detail below.

    a.  *Duty of good faith and fair dealing*

"The duty of good faith and fair dealing . . . is implied by law to inhere in every

insurance policy." *Herrig v. Herrig*, 844 P.2d 487, 490 (Wyo. 1992). This duty

"emanates from the special relationship of the parties to the insurance contract." *Hatch*,

842 P.2d at 1099. A Wyoming insurer providing underinsured motorist coverage thus

"owes a duty of good faith and fair dealing to the insured at all times." *Shrader*, 882 P.2d

at 827.

However, under Wyoming law, "[t]he duty of good faith and fair dealing runs only

from the insurer to the insured." *Herrig*, 844 P.2d at 492. Therefore, only if Big Bear

qualified as the insured with respect to Mr. Rimer's UIM claim would Homestate owe

Big Bear a duty of good faith and fair dealing in the way it "investigated, handled or

denied the claim." *Hatch*, 842 P.2d at 1099. Big Bear argues it was the "Named Insured,"

Appellant Br. at 39, but the Policy's UM endorsement expressly differentiates between

"Named Insured" and "Insured" in the context of the relevant coverage. *See* App. 159.

And it is undisputed that the "Insured" under the UM endorsement was the occupant of

the covered auto—Mr. Rimer—and not Big Bear.

Appellants attempt to distinguish the Wyoming Supreme Court's decision in

*Herrig*, but cannot avoid the unmistakable implication of that case for these facts. In

*Herrig*, a wife lost control of the van she was driving, causing a one-car accident that

injured her husband and two daughters. 844 P.2d at 489. Both the wife and her husband

were named insureds on a liability policy issued by Farmers Insurance. *Id.* The husband and daughters submitted a policy limits settlement demand to Farmers. *Id.* When the insurer failed to respond, the plaintiffs sued, asserting, among other counts, a tortious breach of the duty of good faith and fair dealing in connection with Farmers' "settlement practices." *Id.* at 489–90.

The Wyoming Supreme Court framed the issue as "whether this Court will extend the duty of good faith and fair dealing which runs from an insurer to its insured to also run to its insured's adversary—the third-party claimant." *Id.* at 491. In declining to do so, the court rejected the plaintiffs' argument "that Farmers Insurance owes a duty of good faith and fair dealing to them because [the husband] has a contractual relationship with Farmers." *Id.* The court held that "extending an insurers' duty of good faith and fair dealing to third-party claimants . . . . would only compromise the insurer's ability to protect its own interests and those of its insured." *Id.* at 491–92.

To be sure, *Herrig* featured a third-party adversarial relationship between plaintiff and insurer that is absent here. Nevertheless, its reasoning and holding effectively foreclose Count II of the FAC. At bottom, Big Bear claims Homestate owes it a duty of good faith and fair dealing because Big Bear "has a contractual relationship" with Homestate, *see id.* at 491, the same argument rejected by the *Herrig* court as a basis for bad faith actions. In the tort context, per *Herrig*, the duty of good faith and fair dealing flows not from that contractual relationship, nor from designation as a "named insured" under a policy, but from a determination of who qualifies as the "insured" with respect to the specific claim at issue. As the *Herrig* plaintiffs were "third-party claimants in the

context of th[e] suit, they ha[d] no direct cause of action against Farmers Insurance for

bad faith, either in contract or in tort." *Id.* at 492. Likewise, Big Bear is *not* the "insured"

in the context of this suit, despite having both a contractual relationship with Homestate

and being the Policy's "named insured." Thus, Big Bear has no direct cause of action for

bad faith.

b. *First- or third-party bad faith*

In Wyoming, breach of the duty of good faith and fair dealing can lead to a cause

of action for either "first party" or "third party" bad faith. *Id.* at 490; *accord Shrader*, 882

P.2d at 825–26. Big Bear's allegation falls within neither classification.

Mr. Rimer's claim for underinsured motorist coverage is a first-party claim,

because "[t]he insured involved in an accident with an [underinsured] motorist makes a

direct claim for benefits to the insurer." *Shrader*, 882 P.2d at 826.

> A cause of action for "first party" bad faith will lie when an insurer in bad
> faith refuses to pay its insured's direct claim for policy benefits. Bad faith
> in this context would occur if an insurer knowingly or recklessly denied a
> first-party claim for insurance benefits without having a reasonable basis
> for doing so.

*Herrig*, 844 P.2d at 490 (citations omitted). Big Bear cannot state a claim for first-party

bad faith because Big Bear never brought a "direct claim for policy benefits" of its own

to Homestate. *See id.* The only Policy claim at issue, the UIM claim, was brought by

Mr. Rimer. And Homestate did not "knowingly or recklessly" deny this claim; rather, it

came to a successful settlement. *See id.*; *see also Int'l Surplus Lines Ins. Co. v. Univ. of

Wyo. Research Corp.*, 850 F. Supp. 1509, 1527 (D. Wyo. 1994) (stating that a procedural

first-party bad faith claim "involv[es] only two parties, the insurer and the insured").

As opposed to first-party claims, "[w]hen the benefit derives from the insurer's duty to defend the insured against third-party actions, that relationship is characterized as a third-party claim." *Darlow v. Farmers Ins. Exch.*, 822 P.2d 820, 827 (Wyo. 1991). Third-party bad faith

> will lie when a liability insurer fails in bad faith to settle a third-party claim within policy limits against its insured. Bad faith in this context would occur if an excess judgment were obtained under circumstances when the insurer failed "to exercise intelligence, good faith, and honest and conscientious fidelity to the common interest of the [insured] as well as of the [insurer] and [to] give at least equal consideration to the interest of the insured."

*Herrig*, 844 P.2d at 490 (citations omitted) (quoting *W. Cas. & Sur. Co. v. Fowler*, 390 P.2d 602, 606 (Wyo. 1964)). This category is likewise inapplicable, for no third-party claim is at issue. Mr. Rimer's UIM claim was a first-party claim against Homestate, not a third-party claim against Big Bear. And Big Bear does not classify the Division's lien as a third-party claim that Homestate "fail[ed] in bad faith to settle." *See id.*; Appellant Br. at 25 ("Big Bear did not allege that the Policy it paid for would or should cover the Division's workers' compensation lien . . . ."). Therefore, "[a]s disclosed by the facts of this case, Appellants do not fit the mold necessary to bring an action against [Homestate] for either 'third party' or 'first party' bad faith." *Herrig*, 844 P.2d at 491.

Nor is Big Bear's bad faith claim saved by reference to *Hatch v. State Farm Fire and Casualty Co*. "*Hatch* stands for the proposition that 'breach of an express covenant [in the policy] is not a necessary prerequisite to an action for bad faith.'" App. 287 (alteration in original) (quoting 842 P.2d at 1099). Rather, *Hatch* held that even if an insurer's treatment of a claim is "fairly debatable" under the policy terms, the insurer can

23

still be found to have "investigated, handled or denied the claim" in bad faith. 842 P.2d at 1099. Appellants seek to apply this reasoning to Homestate's failure to thoroughly investigate Mr. Rimer's claim and "alert[] Big Bear to the employee misclassification." Appellant Br. at 37. But unlike Big Bear's claim here, *Hatch* involved a first-party claim by an insured for policy benefits. 842 P.2d at 1090. Thus, Appellants have identified no Wyoming precedent where insurer bad faith was found in any context other than a direct first-party claim for benefits or an adversarial third-party claim for indemnification. Big Bear's claim does not fit either mold, and it consequently cannot make out a bad faith claim under Wyoming law.

And, even if *Hatch* applied, Big Bear has failed to plead facts indicating Homestate "engag[ed] in oppressive and intimidating claim practices," *id.* at 1099, or "performed *no* form of satisfactory investigation," *Cornhusker*, 786 F.3d at 859. As this court previously stated, *Hatch* "powerfully demonstrates the egregious level of misconduct that typically gives rise to liability for procedural bad faith—a level of insurer misconduct that is not even arguably present here." *Cornhusker*, 786 F.3d at 859.

Count II of the FAC is not plausible and the district court properly dismissed it.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

Count III of the FAC alleges a breach of the implied contractual covenant of good faith and fair dealing. Appellants argue Homestate violated this covenant by failing to give notice of Mr. Rimer's UIM claim or to include Big Bear in the settlement negotiations, thereby "foreclosing Big Bear's chance to be heard and to participate" in the workers' compensation lien release executed between Mr. Rimer and the Division.

Appellant Br. at 42. Appellants have again fallen short of pleading facts sufficient to "nudge[]" this claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

In *Scherer Construction, LLC v. Hedquist Construction, Inc.*, 18 P.3d 645 (Wyo. 2001), the Wyoming Supreme Court adopted § 205 of the 2d Restatement of Contracts[9] and held "that parties to a commercial contract may bring a claim for breach of the implied covenant of good faith and fair dealing based on a contract theory." *Id.* at 655. However, the *Scherer* court cautioned this concept "is not a limitless one": The covenant "may not . . . be construed to establish new, independent rights or duties not agreed upon by the parties." *Id.* at 653. Rather, "[t]he implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties." *Id.* at 653 (quoting *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990)).

"Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to." *Id.* at 654 (quoting *Gilmore v. Duderstadt*, 961 P.2d 175, 182 (N.M. Ct. App. 1998)). A claim can be properly dismissed as a matter of law "where the actions alleged to have breached the covenant were in conformity with the clear contract language." *City of Gillette v. Hladky Constr., Inc.*, 196 P.3d 184, 197 (Wyo. 2008). But dismissal is not appropriate if the "conduct involved self-dealing beyond the mere exercise of contract rights or in violation

---

[9] "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (Am. Law Inst. 1981).

of the community standards of decency, fairness, or reasonableness." *Scherer*, 18 P.3d at 654 n.2.

The district court properly dismissed Count III because Big Bear did not plausibly plead that any action taken by Homestate in its handling of the UIM claim was not "in conformity with the clear contract language." *See Hladky*, 196 P.3d at 197. Big Bear, in fact, cites no pertinent Policy language, in either the FAC or its briefing in support of Count III. While it vaguely accuses Homestate of "not conduct[ing] a full examination" of the claim, Appellant Br. at 44, Big Bear does not dispute that Mr. Rimer was "'occupying' a covered 'auto'" at the time of the accident, *see* App. 159, and it presents no factual basis for alleging Homestate failed to investigate "whether there was any underinsured exposure," Appellant Br. at 44.[10] In short, Appellants have failed to adequately challenge Homestate's assertion that it simply "exercised its rights and obligations under the Policy's UM endorsement." Appellee Br. at 23–24.

"[U]under the facts in the record, [Homestate's] actions alleged as the basis for the breach of the implied covenant were in conformity with the clear language of the contract." *Scherer*, 18 P.3d at 654 n.2. As a result, Count III is legally insufficient, because Big Bear has also failed to adequately plead that Homestate engaged in "self-

---

[10] Earlier in its briefing, Big Bear admitted it "did not allege that the Policy it paid for would or should deny Mr. Rimer's underinsured motorist claim." Appellant Br. at 26.

dealing" or violated "community standards of decency, fairness or reasonableness" in handling Mr. Rimer's UIM claim.[11] *Id.* at 653–54.

Wyoming law prohibits the use of the covenant "to establish new, independent rights or duties not agreed upon by the parties." *Scherer*, 18 P.3d at 653. Big Bear seeks to impose extracontractual duties upon Homestate respecting the adjustment and settlement of Mr. Rimer's UIM claim. It also asserts an independent right to intervene in Mr. Rimer's negotiations with the Division—which appears nowhere in the Policy—in hopes of safeguarding its own economic interest. In so doing, Appellants are "urging the [c]ourt to impose duties on Homestate, retroactively and outside any contractual agreement, which would operate to protect and indemnify [Appellants] from their own negligence i[n] failing to make payments required for coverage under Wyoming's worker's compensation laws." App. 289.

---

[11] Big Bear asserts an affidavit from a retained legal expert establishes that Homestate violated "Wyoming standards of decency, fairness, and reasonableness." Appellant Reply Br. at 7. But this affidavit is not properly subject to our review. In addressing a Rule 12(c) motion, this court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quotation marks omitted). As a result, we may consider only the facts in the complaint, attached documents central to the plaintiff's claim, and "mere argument contained in a memorandum in opposition to dismiss." *Cty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (quotation marks omitted). We thus reject Big Bear's ancillary attempt to introduce a plausible dispute as to whether Homestate's actions "went beyond the exercise of contract rights and amounted to self-dealing or a violation of community standards of decency, fairness or reasonableness." *City of Gillette v. Hladky Constr., Inc.*, 196 P.3d 184, 197 (Wyo. 2008).

As the district court reasoned, the liability Big Bear seeks to escape "was not a consequence, collateral or otherwise, of Homestate's adjustment and settlement of Rimer's UIM claim," but rather arose "by operation of law because Big Bear was delinquent in making payments for worker's compensation coverage." App. 279. There is no colorable claim that the implied covenant of good faith and fair dealing is invoked to avoid such liability. Big Bear must instead take up its grievance with Wyoming, for the consequences that flowed from the Division's alleged misclassification of Mr. Rimer—a purported error for which Homestate was in no way responsible.

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of judgment on the pleadings to Homestate.

Entered for the Court


Carolyn B. McHugh
Circuit Judge